JAMES E. CUNNINGHAM *vs*. INHABITANTS OF FRANKFORT.

Waldo.    Opinion June 9, 1908.

*Ways.    Defects.    Actions.    Presumptions.    Burden of Proof.    Liability.    Repairs.*
*Trial.    Revised Statutes, chapter 23, sections 56, 76.*

To maintain an action against a defendant town to recover damages for personal injuries received by reason of an alleged defect in a highway which such defendant town is obliged by law to maintain and keep in repair, it is incumbent on the plaintiff after proving the notices required by the statute, to prove affirmatively that such highway was not safe and convenient for travelers at the point where the accident occurred, that no want of ordinary care on his part contributed to cause the accident and that his injury was occasioned through the defect alone.

Section 56 of chapter 23, R. S., declares that "highways, town ways and streets, legally established shall be opened and kept in repair so as to be safe and convenient for travelers," etc., and section 76 of the same chapter provides that "whoever receives any bodily injury, or suffers damage in his property, through any defect or want of repair . . . . in any highway . . . . may recover for the same in a special action on the case." These two sections were clearly intended to be in harmony with each other and counterparts of the same enactment. They have always been construed to mean that a plaintiff is entitled to recover damage only when he suffers it through any defect or want of repair that will prevent the way from being safe and convenient for travel.

The only measure of duty prescribed by the statute and the only test of liability created by it, will be found in the requirement that the way shall be kept "safe and convenient for travelers." But in the practical application of the statute to the highways of the State, it has uniformly been held by the court of Maine that the words "safe and convenient" are not to be construed to mean entirely and absolutely safe and convenient but reasonably safe and convenient in view of the circumstances of each particular case.

The words "safe and convenient" are considered to be relative terms and the question of safety and convenience must be determined with reference to the special facts and conditions existing in each case, such as the location of the way, the nature and extent of the travel to be accommodated and all the circumstances which may reasonably influence the conclusion. A condition that might readily be accepted as reasonably safe and convenient on ·

a crossroad in a country town, might be grossly unsafe for an important thoroughfare that is in constant use for public travel.

Towns are not made insurers against accidents and injuries on the highways. The statute does not impose upon them the obligation to guarantee the safety of public travel within their limits.

The question is not whether in a given case the town used ordinary care and diligence in the construction and maintenance of the way, but whether as a result the way as constructed and maintained was in fact reasonably safe and convenient for travelers.

The methods of constructing and repairing town ways are necessarily determined in the first instance by the officers of the town to whom that duty is committed, but whether the result fulfills the requirement of the statute is a question which must be ultimately passed upon by the court and jury when it arises.

While a view taken by the jury of the scene of an accident upon a highway may render the testimony more intelligible and otherwise afford valuable assistance, yet it does not authorize the jury to ignore physical facts or disregard settled rules of law.

On motion and exceptions by defendants. Motion sustained. Exceptions not considered.

Special action on the case brought under the provisions of Revised Statutes, chapter 23, section 76, to recover damages for personal injuries received by the plaintiff by reason of an alleged defect in a highway which the defendants were obliged by law to maintain and keep in repair. Plea, the general issue.

Tried at the September term, 1907, of the Supreme Judicial Court, Waldo County. Verdict for plaintiff for $1000. The defendants filed a general motion to have the verdict set aside and also excepted to the ruling of the presiding Justice that "for the purposes of the trial" the notice given by the plaintiff to the municipal officers of the defendant town within fourteen days after the injuries complained of in the writ, contained "a sufficient description of the nature and location of the defect" and was "sufficient in law to enable the plaintiff to maintain his action under the evidence introduced." The exceptions were not considered by the Law Court.

The case appears in the opinion.

*W. P. Thompson*, for plaintiff.

*Dunton & Morse*, for defendants.

SITTING :   EMERY, C. J., WHITEHOUSE, SAVAGE, SPEAR, CORNISH, JJ.

WHITEHOUSE, J.   This is an action to recover damages for personal injuries received by the plaintiff on the nineteenth day of August, 1905, by reason of an alleged defect in a highway which the defendants were obliged by law to maintain and keep in repair. In the plaintiff's declaration the accident is alleged to have occurred on "a certain public highway leading from the road which leads from Black's Corner in Searsport to Frankfort Marsh, about one-third of a mile westerly from the dwelling house of Charles Robinson and at the four corners of the road," and the defect is described as "a large rock in the travelled part of said way protruding about eighteen inches above the ground or top of the road and in the wheel track of the road."   With respect to the cause of the accident, the declaration further states that the plaintiff was riding along this road with his son-in-law Adelbert Small, in a top-buggy drawn by one horse, when the wheel of the carriage came in contact with the rock described and the carriage was thereby overturned, causing a fracture of the plaintiff's left leg and the other injuries of which he complains.

In the notice given by the plaintiff to the municipal officers of the defendant town on the 28th day of August, eight days after the accident, the defect is described as a "large rock in the traveled part of the highway, about eighteen inches thick," without stating that it was protruding above the ground or top of the road" as was alleged in the declaration.   It also satisfactorily appeared from the evidence that the rock was not actually in the traveled part of the way.   The defendant further claimed that the plaintiff's description of the location of the rock in both the declaration and the notice, was inaccurate in stating it to be at the "four corners, a third of a mile westerly from the house of Charles Robinson," since it appeared from the evidence that the direction of the "four corners" where the accident occurred is not in fact "westerly" from the house of Charles Robinson, but north 35 degrees east from his house.   It is also shown by the evidence that there are two other crossings of the ways making "four corners" at two other points north-westerly from the

house of Charles Robinson, and at such a distance therefrom that either of the last mentioned four corners would correspond more nearly with the description contained in the notice, than the four corners where the accident happened.   It was accordingly contended by the defendant that there was a fatal variance between the notice and the evidence respecting both the nature and location of the defect.   But for the purposes of the trial the presiding Justice instructed the jury that the notice contained a sufficient description of the nature and location of the defect, and was sufficient in law to enable the plaintiff to maintain his action under the evidence introduced.   To this ruling the defendant took exceptions.

The jury returned a verdict in favor of the plaintiff for the sum of one thousand dollars, and the case comes to the Law Court on exceptions to the ruling of the presiding Justice holding the notice sufficient, and on a motion to set aside the verdict as against the law and the evidence.

To maintain his action against the defendant town, it was incumbent upon the plaintiff after proving the notices required by statute to prove affirmatively that the highway was not safe and convenient for travelers at the point where the accident occurred ; that no want of ordinary care on his part contributed to cause the accident and that his injury was occasioned through the defect alone.

Section 56 of chapter 23, R. S., declares that "highways, town ways and streets, legally established shall be opened and kept in repair so as to be safe and convenient for travelers," etc., and section 76 of the same chapter provides that "whoever receives any bodily injury, or suffers damage in his property, through any defect or want of repair   .   .   .   in any highway   .   .   .   may recover for the same in a special action on the case."   These two sections were clearly intended to be in harmony with each other and counterparts of the same enactment.   They have always been construed to mean that a plaintiff is entitled to recover damage only when he suffers it through any defect or want of repair that will prevent the way from being safe and convenient for travel.

Thus the only measure of duty prescribed by the statute and the only test of liability created by it, will be found in the requirement

that the way shall be kept "safe and convenient for travelers." But in the practical application of the statute to the highways of the State, it has been uniformly held by this court that the words safe and convenient are not to be construed to mean entirely and absolutely safe and convenient but reasonably safe and convenient in view of the circumstances of each particular case. They are considered to be relative terms and the question of safety and convenience must be determined with reference to the special facts and conditions existing in each case, such as the location of the way, the nature and extent of the travel to be accommodated and all the circumstances which may reasonably influence the conclusion. A condition that might readily be accepted as reasonably safe and convenient on a crossroad in a country town, might be grossly unsafe for an important thoroughfare that is in constant use for public travel. A condition of perfect safety beyond the possibility of an accident is of course unattainable; a condition of reasonable safety only is required. Towns are not made insurers against accident and injury on the highway. The statute does not impose upon them the obligation to guarantee the safety of public travel within their limits. And the question is not whether in a given case the town used ordinary care and diligence in the construction and maintenance of the way; but whether as a result the way as constructed and maintained was in fact reasonably safe and convenient for travelers.

The methods of constructing and repairing public ways are necessarily determined in the first instance by the officers of the town to whom that duty is committed, but whether the result fulfills the requirement of the statute is a question which must ultimately be passed upon by the court and jury when it arises. *Moriarty* v. *Lewiston*, 98 Maine, 482. "A defect such as the statutes contemplates must be something which unlawfully impairs the reasonable safety and convenience of the way." *Bartlett* v. *Kittery*, 68 Maine, 358.

The highway in question in the case at bar, upon which the plaintiff was traveling in going from Belfast to Mosquito Mountain, is a country road with but little travel upon it, being chiefly used

by the workmen going to and returning from their work at the granite quarry. It appears to have been constructed more than fifty years ago, and in the process of building at the four corners in question some rocks were evidently removed and deposited upon the right hand side as the traveler passes around the curve from one road to the other in the direction in which the plaintiff was traveling when he received his injuries. These rocks have never been moved since the road was built. It is a matter of common observation that it is the natural tendency of travel in turning the corner of a highway, to swerve toward the outside of the road and that granite posts or guides are frequently erected to prevent it. It is undoubtedly true that the result of this tendency was to bring the wheel track nearer the rocks in the course of fifty years. But according to measurements made by surveyor Brock of Searsport a short time before the trial, there was a smooth and unobstructed road bed fifteen feet in width between the rock which the plaintiff's carriage wheel is alleged to have struck, and the northerly side of the road. This witness further states that no part of this rock is in the wheel track; that as he drove around the corner in his carriage he allowed his horse "to take her own way," that she followed the horse path and that the wheel of the carriage as it went around passed about two feet from the base of the rock. It also appears from his testimony, corroborated by the photographs in evidence, that for some distance west and south of this rock there is a ridge of earth with grass growing upon it, between the horse path and the right hand wheel track. Mr. Brock was called by the defendant, but he appears to have been a disinterested witness.

It is alleged in the plaintiff's declaration and notice that the rock complained of was in the traveled part of the road, but there is no evidence in the case which would warrant a jury in so finding. The plaintiff himself gives no testimony in support of the allegation but simply states that the rock "sits right on the edge" of the wheel track. The plaintiff's son-in-law Adelbert Small, who was driving the team gives contradictory testimony in both direct and cross examination, but the full extent of his claim is expressed by his statements that the rock was a foot in height above the ground and

"clear up to the wheel track," "perfectly flush with the wheel track." The highway surveyor in that district called by the plaintiff, testifies that the rock was from "one to two feet" from the wheel track. By reason of the intersection of the two roads at this point, the two wheel tracks come together nearly opposite this rock, and according to actual measurements made by Mr. Clark, chairman of the board of selectmen, the face of the rock was two feet and six inches from the wheel track of the straight road that leads from the Frankfort road past the rock, and six inches from outer edge of the wheel track going easterly.

Thus it appears that the alleged defect was a structural condition which had existed without material change for more than fifty years with an ample width of well wrought road where two teams approaching to meet might safely and conveniently pass each other without coming in collision with this rock.

The defendant earnestly contends that a country road in such a situation and condition, with the amount and character of the travel accommodated by this one, must be deemed reasonably safe and convenient.

In *Perkins* v. *Fayette*, 68 Maine, 152, the facts of which were closely analogous to those at bar, the subject is thus treated in the opinion by Judge Peters: "A question arose at the trial as to what extent towns were responsible for injuries to travelers, occasioned by their teams coming in collision with obstructions on the side of the road beyond the traveled way. The judge instructed the jury that towns were not required to render the road passable for the entire width of the whole located limits, and that the duty of the town was accomplished by making a sufficient width of the road in a smooth condition so that it would be safe and convenient for travelers. He also directed the jury that the town had the right, in making or repairing a road, to remove stones and stumps onto the sides of the way and leave natural obstructions there, provided the same were situated so far from the traveled track that persons passing over the road with teams might pass without danger of coming in collision with them. We think it would be utterly

impossible for towns, as a general rule, to do more than that. No doubt there is a chance that the team of a traveler, in the dark or from fright of a horse or some other mishap, might strike against a rock on the side of the way. So, if the rock was not there, it might get into a ditch or bog or against a railing or fence, or encounter some other disaster. It is enough that the way is safe and convenient in view of such casualties as might reasonably be expected to happen to travelers. All possible accidents cannot be provided against by anybody."

In that case it appeared that the plaintiff's horse became frightened at cows in the road having boards on their horns, and being beyond the control of the driver, ran out of the traveled way until the wagon came in collision with a rock which had been left on a line with the outside of the ditch and two feet from the traveled road. The jury were instructed in accordance with the settled law in this State that "if the accident was produced by the fright at the cows and also by a defect in the way, by the combined action of both causes, the plaintiff could not recover." A verdict was returned in favor of the town, and in overruling the exceptions, the court say in the last sentence of the opinion: "In this particular case it would be difficult to see that in any just and proper sense, any defect in the way was even one of a combination of causes producing the accident."

The defendant insists that there is also a striking similarity between that case and the case at bar with respect to the fright of the horse and the real cause of the accident. It appears from the testimony of Mr. Clark, chairman of the selectmen, that the plaintiff's son-in-law Adelbert Small, called to see him on Monday August 21, 1905, two days after the accident, to inquire what action the town proposed to take in regard to the plaintiff's injury. Mr. Clark had not heard of the accident and inquired how it happened. Small said: "It happened about half a mile from Charles Robinson's at the four corners where you go through by what is called the Sally Mack (?) road. They were going to Mosquito Mountain; and when he got to those corners a dog jumped out of the bushes on the opposite side, and the horse got

scared and went on a rock and hove Mr. Cunningham out and broke his leg."

The same afternoon Mr. Clark went to the scene of the accident as located by Small. Reference has already been made to the two measurements made by Clark fixing the location of the rock in relation to the wheel tracks of the two roads. He states that he then found, twenty inches back from the large rock nearest to the wheel track, a smaller one from which the moss had been freshly scraped, and upon which were two fresh marks of carriage wheels. Both of these rocks are disclosed in the photographs. Mr. Clark also noted that the dry bush and twigs had been freshly broken on the east side of the rock. This testimony in regard to the rocks and brush is uncontradicted and Small admits that in answer to Clark's inquiry if he "saw anything that scared the horse," he told him he "saw the dog." He denies, however, that the horse was frightened by the dog, and "should say the horse was in the horse track." It is conclusively shown, however, by testimony and the photographs, that if the horse had been traveling in the well beaten horse path, the wheels of the carriage would not have gone within two feet of the large rock. From this evidence the defendant confidently claims the truth to be that from fright or some other cause the horse went out of the traveled road into the brush, and brought the wheels on the right side of the carriage in contact with the face of a rock twenty inches back from the face of the larger rock claimed to be "on the edge of the wheel track."

The defendant asserts that this is the only rational explanation of an accident which is alleged to have occurred, under the circumstances disclosed, at eleven o'clock in the forenoon of a fair day.

It is true that the jury visited the scene of the accident and saw the road and the rocks. But it is not questioned that the photographs are a correct representation of both. A view may render the testimony more intelligible, and otherwise afford valuable assistance, but it does not authorize the jury to ignore physical facts or disregard settled rules of law.

It is the opinion of the court that under the evidence in this case, the way in question must be deemed reasonably safe and convenient

"in view of such casualties as might reasonably be expected to happen" to the travelers accommodated by it. This conclusion renders it unnecessary to consider further the question of proximate cause or the sufficiency of the notice.

*Motion sustained.*
*Verdict set aside.*
*New trial granted.*