STATE OF MAINE
SAGADAHOC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-19-1

R.J. BRENT LEVESQUE,

    Plaintiff,

    v.

CITY OF BATH,

    Defendant

)
)
)
)
)
)
)
)
)
)
)

**ORDER ON DEFENDANT'S MOTION**
**FOR SUMMARY JUDGMENT**

## INTRODUCTION

The matter before the court is whether Plaintiff R.J. Brent Levesque's ("Levesque") claims against the City of Bath ("the City") under the Highway Defect Statute survive the City's Summary Judgment Motion. Levesque raises three main arguments: (1) that this motion is untimely and should be denied as a sanction under M.R. Civ. P. 16; (2) that the City is barred from taking this position by the doctrine of judicial estoppel; and (3) that the statute should be interpreted more broadly to allow suit by any person injured by a condition on a highway that would potentially be dangerous to travelers. For the reasons discussed below, the motion is GRANTED.

## BACKGROUND

The facts in this case are not materially in dispute. Levesque has lived at his house on 409 High Street in Bath, Maine for over twenty years. (Supp.'g S.M.F. ¶ 5.) His house sits 8-10 feet from the sidewalk which spans between 3 and 3.5 feet alongside High Street. (Supp.'g S.M.F. ¶ 6.) The alleged harm in this case concerns two things. First, Levesque contends that the City has been negligent in its maintenance of the road by inadequately plowing or clearing drains, causing flood damage to his property. ( Supp.'g S.M.F. ¶ 10.) He also alleges that a 2014 re-design project on High Street was conducted in a negligent manner, which also caused flooding.

1

Levesque filed a complaint dated January 10, 2019, in which he made these allegations. Levesque alleged claims under the Maine Tort Claims Act ("MTCA", 14 M.R.S. §§ 8101-8118 (2020), the Sewer Maintenance Statute ("SMS"), 23 M.R.S. § 3251 (2020), and the Highway Defect Statute ("HDS"), 23 M.R.S. § 3655 (2020). After discovery closed, the City moved for partial summary judgment on October 11, 2019, seeking a declaration that Levesque's claims were not cognizable under the MTCA or the SMS. The court granted the motion on April 22, 2020. The City now moves for summary judgment on the remaining claim, arguing that Levesque's claims also fall outside the scope of the HDS.

## STANDARD OF REVIEW

Summary judgment is granted to a moving party where "there is no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law." M.R. Civ. P. 56(c). "A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." *Lougee Conservancy v. City Mortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774 (quotation omitted). "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." M.R. Civ. P. 56(h)(4). In order to controvert an opposing party's factual statement, a party must "support each denial or qualification by a record citation." M.R. Civ. P. 56(h)(2). Assertion of material facts must be supported by record references to evidence that is of a quality that would be admissible at trial." *HSBC Mortg. Servs. v. Murphy*, 2011 ME 59 ¶ 9, 19 A.3d 815.

## DISCUSSION

The City argues that Levesque's claims fall outside the HDS, which it argues only creates a cause of action for travelers on public highways. Levesque responds by first

2

arguing that the City's motion is untimely. On the substance of the motion, he argues that the City construes the HDS too narrowly and is estopped from raising these issues by judicial estoppel.

1.    Untimeliness

Levesque's untimeliness argument relies on three facts: that the instant motion was submitted after the motion deadline in the court's Scheduling Order, that all arguments raised in the motion could have been raised in its first motion for summary judgment, and that the motion will have the effect of further delaying trial in the case. Levesque's contention is that the motion should be denied as a sanction for its untimely submission under M.R. Civ. P. 16(d) in light of these facts.

M.R. Civ. P. 56(b) provides that a defending party in a case may move for summary judgment "at any time, but within such time as to not delay the trial." As the City correctly notes, the trial court has discretion whether to allow a late filed summary judgment motion when doing so would not delay the trial. *Levis v. Konitzky*, 2016 ME 167, ¶ 17, 151 A.3d 20. Where there is a scheduling order that imposes a deadline, better practice is still to file a motion asking the court for leave to file a late motion if new grounds develop late in the case. *Id.* at ¶ 16. However, the court still has considerable discretion in determining whether to grant this late motion. *Id.*

There are no new grounds raised in the City's motion, only a new legal argument. Levesque is correct when he points out that these arguments could easily have been raised in the previous summary judgment motion. It is also worth noting that the City did not move for leave to file this motion. Best practices aside, the salient question is whether considering the City's new motion for summary judgment would delay trial. The motion was filed August 3, 2020, four months before the earliest potential trial date in November 2019 due to delays in civil trials brought about by COVID-19. To date, there

is still a great deal of uncertainty surrounding the scheduling of trial dates. No jury session has been scheduled on Sagadahoc County matters and only criminal jury trials are being scheduled anywhere in the state at this time. In light of this, and absent any indication of bad faith, the court will hear the motion.

2.    Judicial Estoppel

Levesque argues that the City is barred from moving for summary judgment on his HDS claims by the doctrine of judicial estoppel. Specifically, he argues that the City took the position that his claims were cognizable under the HDS and is therefore estopped from arguing the reverse here.

The doctrine of judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Me. Educ. Ass'n v. Me. Cmty. College Sys. Bd. Of Trs.*, 2007 ME 70, ¶ 16, 923 A.2d 914 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). "The contours of the judicial estoppel doctrine are not sharply defined, and there is no mechanical test for determining its applicability." *Id.* ¶ 17. However, the Law Court has adopted three factors from *New Hampshire v. Maine* to guide the analysis:

(1) whether the party's later position is clearly inconsistent with its earlier position;

(2) whether the party succeeded in persuading a court to accept that party's earlier position; and

(3) whether an unfair advantage or detriment would be created.

*Me. Educ. Ass'n*, 2007 ME 70, ¶ 18, 923 A.2d 914. This case does not fit any of the factors.

First, contrary to Levesque's assertion, it does not appear that the City was taking the affirmative position that plaintiff's claims were cognizable under the HDS. To support his characterization of the City's prior position, Levesque quotes their reply

4

brief where they state that his claims are "only cognizable pursuant to the HDS." (Def.'s Reply to Pl.'s Opp. First Mot. Summ. J. at 1, 9.) This ignores the many conditional statements in the City's filings on that motion which say that Levesque's claims "may" fall within the HDS or that they "potentially" do. (Def.'s Mot. Partial Summ. J. at 1, 11.) It is fairly obvious that the City's position in its prior motion was that it did not want to litigate the HDS issue at that time, not that it was conceding its applicability to Levesque's claims. At the very least, its prior position is not *clearly* inconsistent with its current one.

Second, even if the City were in fact arguing that the HDS applies to Levesque's claims, the court clearly did not adopt that position. At most, the court's order states that "the City does not dispute that plaintiff is potentially entitled to relief" under the statute. The court did not accept the position that the HDS *does* apply to Levesque's claims, only that it might. Thus, the second factor weighs against applying judicial estoppel.

Finally, no unfair advantage or detriment would be created by allowing the City to argue its current position. These issues were not litigated on the prior summary judgment motion. Levesque seems to argue that the City prejudiced him by convincing the court to close down his other avenues for relief because it believed that he would be able to recover under this statute. This mischaracterizes the court's prior holding. The court granted partial summary judgment on two other statutes and left the issue of the HDS for another day. Levesque did not suffer a detriment at all, let alone an unfair one.

In light of the above, the City's arguments are not barred by judicial estoppel.

3. Statutory Interpretation

The substance of the dispute at issue is whether the HDS applies to all people who sustain injuries as a result of a highway defect, or whether it only applies to

5

"travelers." The City points to cases which endorse the latter interpretation, Levesque argues that these cases are too antiquated to be relied on and that the statute has been updated since then to enable actions by any person, so long as they were injured by a defect that would be dangerous to travelers.

The HDS provides that "highways, town ways and streets legally established shall be opened and kept in repair so as to be safe and convenient for travelers with motor vehicles." 23 M.R.S. § 3651 (2020). It further provides that "a person who receives any bodily injury or suffers damage in the person's property through any defect or want of repair or sufficient railing in any highway, town way, causeway or bridge may recover for the same in a civil action." 23 M.R.S. § 3655 (2020).

The Law Court has held that these provisions "were clearly intended to be in harmony with each other." *Cunningham v. Inhabitants of Frankfort*, 104 Me. 208, 211, 70 A. 441, 442 (1908). The court went on to clarify that these provisions "have always been construed to mean that a plaintiff is entitled to recover damage only when he suffers it through any defect or want of repair that will prevent the way from being safe and convenient for travel." *Id.*

The City cites other cases, all of which hold that the duty of towns to keep their roads free of defects is only owed to travelers. In *Leslie v. City of Lewiston*, for instance, the court said the following:

> The statute requires cities and towns to keep their "ways safe and convenient" for travellers only; and when this is done they have no further duties or responsibilities in relation to them. Hence, when the statute further provides that "any person" who suffers damage through any defect in a way, shall have a remedy, it necessarily refers to that class of persons who were, not only in the lawful use of it, but for whose use and whose safety and convenience it was established.

62 Me. 468, 470 (1873). Levesque argues that these cases should not apply to the case at bar, because they are out of date with updates to the statute. However, he is unable to

6

point to a single case that supports his more restrictive reading. In fact, more recent cases seem to reflect an understanding that this is settled law. *See, e.g., Curtis v. Ellsworth*, 292 A.2d 197, 199 (Me. 1972) (describing this statute as providing for "the liability of cities and towns for damages sustained by travelers by reason of defects in highways").

While Levesque is correct that the statute at issue has been subject to a "multitude of amendments," *Thorbjhonson v. Rockland Rockport Lime Co., Inc.*, 275 A.2d 588, 592-97 (Me. 1971), he fails to point to any amendment that would imply that the statute has changed in such a way as to negate the precedential value of these cases. He points to the most recent amendment, passed in 2017, which changed the description of the party who could sue from "whoever" to "a person." P.L. 2017 Ch. 402 § C-74. However, a simple glance at that amendment makes it quite clear that the Legislature was amending the statute to remove the male pronouns that followed and render the statute gender neutral. More importantly, the two statutory provisions that are "intended to be in harmony with each other" still refer to travelers when considered as a cohesive whole.

The case law and legislative history is quite clear on this issue. Maine courts do not find liability under the HDS for persons who were not using the road as a traveler. Here, Levesque's harm does not arise from a use of the road at all, as a traveler or otherwise. His claims arise from his ownership of property abutting the road. This is not within the scope of the HDS, so summary judgment will be granted for the City.

## CONCLUSION

For the foregoing reasons, the City of Bath's Motion for Summary Judgment is GRANTED. Judgment is entered for the Defendant, plus costs.

7

The clerk is directed to incorporate this Order by reference in the docket in accordance with M.R. Civ. P. 79(a).

DATED: November 3, 2020

Daniel I. Billings
Justice, Maine Superior Court

RJ BRENT LEVESQUE   - PLAINTIFF
409 HIGH STREET
BATH ME 04530
Attorney for: RJ BRENT LEVESQUE
FRED JAY MEYER   - RETAINED
TROUBH HEISLER LLC
200 PROFESSIONAL DRIVE, SUITE
SCARBOROUGH ME 04074


vs
CITY OF BATH - DEFENDANT
55 FRONT STREET
BATH ME 04530
Attorney for: CITY OF BATH
JONATHAN BROGAN   - RETAINED
NORMAN HANSON & DETROY LLC
PO BOX 4600
TWO CANAL PLAZA
PORTLAND ME 04112-4600

SUPERIOR COURT
SAGADAHOC, ss.
Docket No   BATSC-CV-2019-00001


**DOCKET RECORD**

Filing Document: COMPLAINT                    Minor Case Type: OTHER NON-PERSONAL INJURY TORT
Filing Date: 01/11/2019

## Docket Events:

01/14/2019 FILING DOCUMENT - COMPLAINT FILED ON 01/11/2019

01/14/2019 Party(s):  RJ BRENT LEVESQUE
          ATTORNEY - RETAINED ENTERED ON 01/11/2019
          Plaintiff's Attorney: FRED JAY MEYER

01/14/2019 ASSIGNMENT - SINGLE JUDGE/JUSTICE ASSIGNED TO JUSTICE ON 01/11/2019
          DANIEL I BILLINGS , JUSTICE

01/24/2019 Party(s):  CITY OF BATH
          SUMMONS/SERVICE - ACK OF RECEIPT OF SUMM/COMP SERVED ON 01/14/2019
          Defendant's Attorney: ROGER THERRIAULT
          FOR THE CITY OF BATH

01/24/2019 Party(s):  CITY OF BATH
          SUMMONS/SERVICE - ACK OF RECEIPT OF SUMM/COMP FILED ON 01/24/2019
          Plaintiff's Attorney:  FRED JAY MEYER

01/29/2019 Party(s):  CITY OF BATH
          RESPONSIVE PLEADING - ANSWER & AFFIRMATIVE DEFENSE FILED ON 01/28/2019
          Defendant's Attorney: JONATHAN BROGAN

01/29/2019 ORDER - SCHEDULING ORDER ENTERED ON 01/29/2019
          DANIEL I BILLINGS , JUSTICE
          ORDERED INCORPORATED BY REFERENCE AT THE SPECIFIC DIRECTION OF THE COURT.  COPIES TO
          PARTIES/COUNSEL

01/29/2019 DISCOVERY FILING - DISCOVERY DEADLINE ENTERED ON 10/29/2019

01/29/2019 Party(s):  CITY OF BATH

STATE OF MAINE
SAGADAHOC, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-2019-001

R.J. BRENT LEVESQUE,

          Plaintiff,

v.

CITY OF BATH,

          Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

**ORDER ON DEFENDANT'S
MOTION FOR PARTIAL SUMMARY
JUDGMENT**

This matter is before the Court on Defendant City of Bath's Motion for Partial

Summary Judgment. For the following reasons, Defendant's Motion is GRANTED.

## SUMMARY JUDGMENT FACTUAL RECORD

On January 11, 2019, Plaintiff commenced this action alleging that the City of Bath

(the "City") "negligently designed, constructed, repaired, maintained and cleaned High

Street and the Drainage Facilities" in the vicinity of his residence, which caused personal

injury and property damage.[1] (Pl.'s Compl. ¶¶ 7-9,10,13.) The following facts are

undisputed.

Plaintiff has lived at 409 High Street in Bath, Maine for approximately twenty

years. (Supp.'g S.M.F. ¶ 3.) Plaintiff's residence sits at the corner of High Street and

Corliss Street, approximately 8-10 feet from a sidewalk that runs alongside High Street.

(Supp.'g S.M.F. ¶¶ 4-5.) In 2014, the City redesigned and repaved High Street. (Supp.'g

S.M.F. ¶ 7.) Plaintiff alleges that this is when he first began experiencing flooding,

---

[1] Although not pleaded as such, Plaintiff appears to be seeking recovery under the Maine Tort Claims Act, 14 M.R.S. §§ 8104-A(4) (2019), the so-called "Sewer Maintenance Statute," 23 M.R.S. § 3251 (2019), and the so-called "Highway Defect Statute," 23 M.R.S. § 3655 (2019). (*See* Pl.'s Opp'n to Def.'s Mot. Summ. J. 4, 5, 7.)

1

stating, when the contractor re-designed High Street in 2014 "it didn't do a very good job." (Supp.'g S.M.F. ¶¶ 8, 14.) Plaintiff references various flooding events between December 2014 and March 2018. (Supp.'g S.M.F. ¶ 10.) Specifically, during periods of heavy rain or snow, water would back up in the City's drainage system, pool in the street, and then flow over the curb and into his lawn, landscaping, driveway, garage, and around his foundation. (Supp.'g S.M.F. ¶¶ 9, 11.) The stormwater issues were exacerbated by discharge from the bank on the west (southbound) side of High Street, which caused water to flow over the street and onto his property. (Supp.'g S.M.F. ¶ 12.)

Plaintiff retained Thomas W. Saucier ("Mr. Saucier"), a licensed engineer, to corroborate and provide expert testimony regarding the "defects in the design, construction, repair and maintenance of High Street and the drainage systems in the vicinity of Plaintiff's residence." (Supp.'g S.M.F. ¶ 15.) Mr. Saucier identified the following material defects. First, the gutter line on east side of High Street – where the curb meets the road – lacks sufficient grade to permit proper drainage. (Supp.'g S.M.F. ¶ 16.) According to Mr. Saucier, proper engineering practice requires a one percent longitudinal slope, at minimum, a half percent slope. (Supp.'g S.M.F. ¶ 17.) The slope was at times less than a tenth of an inch. (Supp.'g S.M.F. ¶ 18.) Second, the distance from the top of the curb to where it meets the pavement, the so called "reveal" was between 4.2 and 5.1 inches. This was inconsistent with the five-inch minimum required by the design plan. (Supp.'g S.M.F. ¶ 20.) Had the reveal been consistent with the plan, there may not have been as much overflow. (Supp.'g S.M.F. ¶ 20.)

Third, the catch basin in front of Plaintiff's residence (on the east side of High Street) should have been adjacent to the curb, and the grade around the catch basin is flat – both flaws that could cause water to pond in front of Plaintiff's residence. (Supp.'g S.M.F. ¶¶ 21-22.) Fourth, the road crown on the west side of High Street (opposite

2

Plaintiff's residence) is below engineering standards and not constructed in accordance with the 2014 design plans. (Supp.'g S.M.F. ¶¶ 23-25.) If drainage on the west side of High Street is impeded by snow, ice or leaves, runoff can cross the street and exacerbate ponding in front of Plaintiff's residence. (Supp.'g S.M.F. ¶ 23.) Mr. Saucier stated that if the road had been properly crowned, it would have acted as a barrier, and prevented water from spilling across the street and onto Plaintiff's Property. (Supp.'g S.M.F. ¶¶ 27-28.) Fifth, when High Street was rehabilitated in 2014, grinding and grading were not consistent with the design plans, which has been a "significant cause of the problems with runoff flow and ponding . . . ." (Supp.'g S.M.F. ¶¶ 29-30.) Sixth, Mr. Saucier stated that the drainage outlet intersecting Corliss and High Street, and the one in front of Plaintiff's residence, is inadequate to handle the amount of stormwater. (Supp.'g S.M.F. ¶¶ 31-35.) Lastly, Plaintiff also alleges that the City dug out a drainage ditch on the west side of High Street to help alleviate drainage issues, and at some point, the City removed a "drainpipe diffuser" at the end of a drainpipe, which caused water to discharge straight at Plaintiff's property. (Supp.'g S.M.F. ¶¶ 36-37.)

The City moved for a partial summary judgment declaring that Plaintiff's claims fall outside the scope of the Maine Torts Claims Act ("MTCA"), and so-called "Sewer Maintenance Statute," and that Plaintiff's only cognizable claim is under the so-called "Highway Defect Statute," 23 M.R.S. § 3655 (2019), which limits recovery to $6,000.

## STANDARD OF REVIEW

A party is entitled to summary judgment when review of the parties' statements of material facts and the record to which the statements refer, demonstrates that there is no genuine issue as to any material fact in dispute, and that the moving party is entitled to judgment as a matter of law. *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821; M.R. Civ. P. 56(c). A contested fact is "material" if it could potentially affect the outcome

3

of the case. *Id.* A "genuine issue" of material fact exists if the claimed fact would require a factfinder to "choose between competing versions of the truth." *Id.* (quoting *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.,* 2005 ME 93, ¶ 9, 878 A.2d 504). Each parties' statements must include a reference to the record where "facts as would be admissible in evidence" may be found. M.R. Civ. P. 56(e).

When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Id.* The evidence offered in support of a genuine issue of material fact "need not be persuasive at that stage, but the evidence must be sufficient to allow a fact-finder to make a factual determination without speculating." *Estate of Smith v. Cumberland Cty.,* 2013 ME 13, ¶ 19, 60 A.3d 759.

## DISCUSSION

The facts are generally uncontested.[2] The City does not dispute that Plaintiff is potentially entitled to relief under the Highway Safety Statute. (Def.'s Reply Mot. Summ. J. 1, n. 1.) After a thorough review of the briefs and applicable law, the Court concludes that Plaintiff has not produced sufficient evidence demonstrating that he would be entitled to relief under the Maine Tort Claims Act, ("MTCA"), 14 M.R.S. § 8104-A(4), and/or the Sewer Maintenance Statute, 23 M.R.S. § 3251 (2019).

### I.    Maine Tort Claims Act

The City first seeks a summary judgment on Plaintiff's claim under the MTCA. A governmental entity is generally immune from tort claims seeking damages.[3] *See Paschal*

---

[2] A genuine issue of fact exists as to the timing of the City's alleged negligent acts and omissions, specifically with regards to the drainpipe diffuser. (Supp.'g S.M.F. ¶ 38.) Furthermore, Plaintiff contends that a City constructed storm drain is located on his property, a prerequisite to maintain a claim under the Sewer Maintenance Statute. (Add. S.M.F. ¶ 40.)

[3] "Except as otherwise expressly provided by statute, all governmental entities shall be immune from suit on any and all tort claims seeking recovery of damages. When immunity is removed by

4

*v. City of Bangor*, 2000 ME 50, ¶ 10, 747 A.2d 1194. The MTCA does, however, permit recovery under the following exception:

> A governmental entity is liable for its negligent acts or omissions arising out of and occurring during the performance of construction, street cleaning or repair operations on any highway, town way, sidewalk . . . . A governmental entity is not liable for any defect, lack of repair or lack of sufficient railing in any highway, town way, sidewalk, parking area, causeway, bridge, airport runway or taxiway or in any appurtenance thereto.

14 M.R.S. § 8104-A(4). (Def.'s Mot. Summ. J. 7.) First, the only "construction" or "repair operations" that allegedly took place within the two-year statute of limitations[4] occurred when the City dug out the drainage ditch on the west side of High Street and removed a "drainpipe diffuser." (Supp.'g S.M.F. ¶¶ 36-37.) For purposes of the summary judgment record, the Court accepts Plaintiff's contention that the City was involved.[5]

With regards to "street cleaning," Plaintiff testified at deposition that during storm events he would "call the city, and . . . a guy would show up and come and clean out the drains [across from my house . . . approximately four hours after the event was over." (Pl.'s Opp'n to Def's Mot. Summ. J. 8; Levesque Dep. 19.) This delay allegedly damaged Plaintiff's property, and at times, Plaintiff had to clean the drains himself.

However, Section 8104-A(4) does not create a duty on the part of the City to clean or repair its streets. *Paschal v. City of Bangor*, 2000 ME 50, ¶ 12, 747 A.2d 1194. Rather, it places a duty on the City to conduct its street cleaning and repair operations with due

---

this chapter, any claim for damages shall be brought in accordance with the terms of this chapter." 14 M.R.S. § 8103(1).

[4] The MTCA has a two-year state of limitations, not one year as the City suggests. 14 M.R.S. § 8110 (any claim against a governmental entity under the MTCA must be commenced within 2 years after the cause of action accrues).

[5] The City's attempt to clarify its involvement after introducing Paragraph 38 in its Statement of Material Facts is improper. A moving party cannot introduce a new statement of material fact in its reply brief accompanied by an affidavit attached to that reply. (*See* Def.'s Reply to Pl.'s Opp'n 4; Ex. B.)

care. *Id.* Put another way, to generate liability pursuant to Section 8104-A(4), "both the governmental entity's negligence and the resulting injury to the claimant must occur during the course of the construction, street cleaning, or repairs at issue." *Rice v. City of Biddeford*, 2004 ME 128, ¶ 11, 861 A.2d 668; *Kitchen v. City of Calais*, 666 A.2d 77 (Me. 1995) ("There is no evidence of any construction, street cleaning or repair operations taking place in the parking area at the time [plaintiff fell over a raised curb in the parking area]"). Accordingly, "if an injury occurs only after repairs have been completed, immunity is not waived by section 8104-A(4)." *Rice*, 2004 ME 128, ¶ 11, 861 A.2d 668.

Viewing the evidence in the light most favorable to Plaintiff, Plaintiff failed to produce sufficient evidence to support a finding that any personal injury or property damage occurred during, and as a result, of the City's negligent construction, street cleaning, or repair operations. Thus, Plaintiff's claims fall outside the scope of the MTCA.

## II. Sewer Maintenance Statute

Although not pleaded as such, Plaintiff also appears to be seeking recovery under the Sewer Maintenance Statute.[6] Pursuant to Section 3251, a town may construct ditches, drains and culverts to carry water away from a road, and "over or through" another person's land, when they find it necessary for the public convenience or to properly care for the road. 23 M.R.S. § 3251 (2019). If the town fails to maintain and keep in good repair

---

[6] "The municipal officers of a town may at the expense of the town construct ditches, drains and culverts to carry water away from any highway or road therein, and over or through any lands of persons or corporations, when they deem it necessary for public convenience or for the proper care of such highway or road, provided no such ditch, drain or culvert shall pass under or within 20 feet of any dwelling house without the consent of the owner thereof. Such ditches, drains and culverts may be constructed under such highways or roads. Such ditches, drains or culverts shall be under the control of said municipal officers and interference therewith may be punishable by a fine of not more than $500 or by imprisonment for not more than 3 months, or by both. *If such town does not maintain and keep in repair such ditches, drains and culverts, the owner or occupant of the lands through or over which they pass may have his action against the town for damages thereby sustained.*" 23 M.R.S. § 3251 (2019) (emphasis added).

6

these ditches, drains or culverts, "the owner or occupant of the lands through or over which they pass may have his action against the town for damages thereby sustained." *Id.*

As threshold matter, Plaintiff failed to set forth facts evidencing that any ditch, drain, or culvert pass "over or through" his property. (Add. S.M.F. ¶ 40.) Paragraph 40 of Plaintiff's additional statement of material facts suggests that "a section of storm drain located north of the northwest corner of Corliss Street and High street and east of the side of Hight street, . . . crosses the southwest corner of Plaintiff's Property." (Add. S.M.F. ¶ 40.) However, the evidence offered in support of this fact – an aerial image of Plaintiff's property from the 2014 High Street Rehabilitation Plan – depicts a storm drain that appears to be located entirely outside of Plaintiff's property boundary. Because the record does not contain sufficient evidence demonstrating any ditch, drain or culvert is located on his Property, Plaintiff cannot recover under the Sewer Maintenance Statute.

Even if the Court concludes that a genuine issue of material fact exists with regards to the location of the drainage system, Plaintiff has not demonstrated that the City failed to "maintain or keep in repair" the drainage system within the meaning of the statute. The record demonstrates: (1) the City failed to comply with the 2014 High Street Rehabilitation design plans; (2) the City failed to timely remove snow, leaves and debris; and (3) the City removed the drainpipe diffuser. (Supp.'g S.M.F. ¶¶ 13, 27, 30-32, 36-37; Pl.'s Opp'n to Def.'s Mot. Summ. J. 6.) The Court agrees with the City that liability cannot be based on faulty design in the original plan of construction. *Austin v. Inhabitants of St. Albans*, 144 Me. 111, 113-114 , 65 A.2d 32 (Me. 1949) (there is no remedy under the statute if the ditch, drain or culvert is not large enough to care for the amount of stormwater); *see Sait v. Town of Readfield*, 2004 Me. Super. LEXIS 52, at *19 (Feb. 6, 2004). The Court further

7

concludes that Plaintiff's remaining allegations fail to set forth sufficient evidence demonstrating the City may be liable under the Sewer Maintenance Statute.

## CONCLUSION

For the reasons stated above, the Defendant's Motion for Partial Summary Judgment is GRANTED. Any recovery by the Plaintiff will be limited to $6,0000 under the provisions of the Highway Defect Statute.

The Clerk is directed to incorporation this Order by reference into the docket for this case, pursuant to Rule 79(a), Maine Rules of Civil Procedure

DATE: April 22, 2020

Daniel I. Billings, Justice
Maine Superior Court

8